IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SCRIPTPRO LLC,                              )
                                            )
            Plaintiff,                      )
                                            )
v.                                          )
                                            )  No. 06-2468-CM
                                            )
INNOVATION ASSOCIATES, INC.,                )
                                            )
            Defendant.                      )
                                            )

**MEMORANDUM AND ORDER**

Plaintiff ScriptPro, LLC, brings this action alleging that defendant Innovation Associates, Inc. ("Innovation"), is infringing on a patent it owns. (Doc. 89.) Innovation counterclaims for a declaratory judgment of invalidity, non-infringement and/or unenforceability as to the patent, and also alleges tortious interference with prospective and existing business relations and unfair trade practices in violation of New York General Business Law § 349. (Doc. 113.) The parties have each submitted proposed constructions of various terms that they believe to be in issue. Before the court is ScriptPro's Claim Construction Brief (Doc. 97) (including two exhibits); Innovation Associates, Inc.'s Claim Construction Memorandum (Doc. 123) (including Exhibits A through E); ScriptPro's Reply Brief to IA's Claim Construction Brief (Doc. 128) (including Exhibits A through E); and Innovation Associates Inc.'s Sur-reply Regarding Claim Construction (Doc. 140) (including one exhibit). Also before the court is ScriptPro's Motion to Strike, or in the Alternative, Motion to Accept Additional Briefing (Doc. 141) (including one exhibit). Pursuant to representations made by the parties, the court believed a hearing on claim construction issues would be unnecessary. Having fully considered the arguments, authorities, and applicable law, the court denies the pending motion

and construes the terms as set forth below.

**I.    Factual and Procedural Background**

Both ScriptPro and Innovation sell robots that automatically fill prescriptions for pharmacies (Automatic Dispensing Systems, or ADSs). The robots consist of a cabinet that stores the medication and a mechanism that dispenses the medication into individual containers. ScriptPro holds a patent for and sells a "collating unit" that attaches to an ADS and sorts output into holding areas grouped by patient or other identifying information.

This matter involves Patent No. 6,910,601 ("the '601 patent"), which describes ScriptPro's collating unit. ScriptPro originally filed this action on October 26, 2006, alleging that Innovation was infringing on ScriptPro's '601 patent. Innovation petitioned the United States Patent and Trademark Office ("PTO") to reexamine the '601 patent, and the PTO granted the petition. The court stayed this matter pending conclusion of the PTO's reexamination. The PTO rejected Claims 1 and 2 as unpatentable over several pieces of prior art. In reponse, ScriptPro substantively amended those claims. On August 14, 2009, the PTO issued a decision granting Claims 1 and 2 as amended. The stay in this case has now been lifted, and the parties have begun discovery. At issue in this action are Claims 1, 2, 4, and 8.

**II.    Arguments**

ScriptPro asserts it does not believe that any of the claim terms require special construction. Nevertheless, ScriptPro proffers a construction of the following twelve (12) claim terms based on dictionary definitions:

- "collating unit"
- "storage unit"
- "infeed conveyor"
- "plurality"

- "holding areas"
- "guide arm"
- "control system"
- "frame"
- "surrounding"
- "covering"
- "base"
- "longitudinal slot"

(Doc. 97, at 6) (citing http://www.merriam-webster.com/dictionary/.)  Innovation believes that ScriptPro's constructions, because they are based solely on dictionary definitions and not on the disclosures and descriptions in the patent, should be rejected as both incorrect and unnecessary.

Innovation believes there are six (6) terms/phrases that should be construed:

- "collating unit for automatically storing prescription containers dispensed by an automatic dispensing system"
- "mounted within the storage unit"
- "a control system for controlling operation of . . ."
- "a plurality of holding areas formed within the [storage unit/frame]"
- "collating unit conveyor"
- "a frame raised above and substantially surrounding at least a portion of at least one of the infeed conveyor or another conveyor"

(Doc. 123, at 5.)  Innovation provides the constructions it believes are supported by the language of the patent specifications.

In reply, ScriptPro argues against the court adopting Innovation's constructions.  It asserts that Innovation's proposed definitions are too limited and are contrary to the plain language and common meaning of the terms contained in the patent claims.  ScriptPro asserts that all the terms identified by both parties (except for the terms "plurality" and "storage unit") require construction by the court.

The court granted Innovation's motion for leave to file a surreply in order to reply to arguments made in ScriptPro's brief regarding Innovation's proposed constructions.  (Doc. 132.) ScriptPro now seeks, over Innovation's objection, to respond to "entirely new issues" raised by

Innovation in the surreply. (Doc. 141, at 2.) ScriptPro attaches its proposed brief to its motion.

### III. Motion to Strike

Surreplies are not contemplated under D. Kan. Rule 7.1(c), which requires responsive briefs and permits reply briefs. Surreplies are permitted only in rare cases with leave of court where a nonmoving party needs to respond to information raised for the first time in a reply brief. *See, e.g., King v. Knoll*, 399 F. Supp. 2d 1169, 1173–74 (D. Kan. 2005).

In this case, ScriptPro filed its claim construction brief. (Doc. 97.) Innovation filed a response to this brief, and set out its own claim construction arguments. (Doc. 123.) ScriptPro responded to Innovation's arguments. (Doc. 128.) In its order granting Innovation leave to reply to ScriptPro's response, the court noted that, although styled as a "surreply," the brief was essentially a reply to ScriptPro's response to Innovation's claim construction brief. (Doc. 132.) Innovation filed its "surreply." (Doc. 140.) ScriptPro now argues it should be allowed to respond to new arguments raised in Innovation's "surreply." Despite ScriptPro's characterizations, the court does not believe that the "surreply" raises new arguments. To the extent it does raise new arguments, it does so improperly and the court will not consider them. Each party has had ample opportunity to respond and to reply to the claim construction arguments made by the other. And additional briefing is not necessary for the court to have a complete understanding regarding the dispute. The motion is therefore denied.

### III. Legal Standards

A patent infringement analysis involves two steps: (1) construing the meaning and scope of the claims and (2) comparing the construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). This matter is currently before the court for claim construction.

Claim construction is a matter of law for the court to determine. *Id*. When construing the disputed language of the claims of the patent, the court seeks to give a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention. *Innova/Pure Water, Inc., v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). The court must first consider intrinsic evidence, which includes the claim language; the patent specification; and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83 (Fed. Cir. 1996). The court may consider extrinsic evidence to educate itself about the scientific principles or technical terms that are at issue, but the extrinsic evidence cannot be used to vary or contradict the intrinsic evidence. *Great Plains Lab., Inc. v. Metametrix Clinical Lab.*, No. 04-2125-JTM, 2006 WL 2663680, at *3 (D. Kan. Sept. 15, 2006) (citing *Teleflex, Inc. v. Ficosa N. Am.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005)).

Generally, claim terms should be construed consistently with their ordinary and customary meanings, as determined by those of ordinary skill in the art. But the claims must be read in conjunction with (1) the specification, which explains the invention and may define the terms used in the claims; and (2) the prosecution history, which may clarify the terms used. *Markman*, 52 F.3d at 979.

### III. Claims at Issue

The claims involved, as amended and approved by the PTO, describe the invention as follows (Innovation's disputed terms appear in bold, ScriptPro's are underlined at their first appearance within the disputed phrases):

1. A **collating unit configured to automatically store therein prescription containers dispensed by an automatic dispensing system**, the collating unit comprising:
   a storage unit configured to store in an upright configuration a plurality of prescription containers delivered by an infeed conveyor;

**a plurality of holding areas formed within the storage unit** for holding the plurality of prescription containers in an upright configuration;

a plurality of guide arms **mounted within the storage unit** and operable to maneuver the plurality of prescription containers from the infeed conveyor into the plurality of holding areas, and

a **control system for controlling operation of the infeed conveyor and the plurality of guide arms**;

wherein the storage unit includes **a frame raised above and substantially surrounding at least a portion of at least one of the infeed conveyor or another conveyor**, the plurality of holding areas being formed within the frame for holding the plurality of prescription containers.

2. A **collating unit for automatically storing prescription containers dispensed by an automatic dispensing system**, the collating unit comprising:

a storage unit for storing the containers delivered by an infeed conveyor;

**a plurality of holding areas formed within the storage unit** for holding the containers;

a plurality of guide arms **mounted within the storage unit** and operable to maneuver the containers from the infeed conveyor into the plurality of holding areas; and

a **control system for controlling operation of the infeed conveyor and the plurality of guide arms**;

wherein the storage unit includes:

a **collating unit conveyor** generally adjacent to the infeed conveyor; and

**a frame substantially surrounding and covering at least a portion of the collating unit conveyor**, the plurality of holding areas being formed within the frame for holding the containers.

. . . .

4. A **collating unit for automatically storing prescription containers dispensed by an automatic dispensing system**, the collating unit comprising:

a storage unit for storing the containers delivered by an infeed conveyor;

**a plurality of holding areas formed within the storage unit** for holding the containers;

a plurality of guide arms **mounted within the storage unit** and operable to maneuver the containers from the infeed conveyor into the plurality of holding areas; and

a **control system for controlling operation of the infeed conveyor and the plurality of guide arms**;

wherein the storage unit includes:

a base positioned generally adjacent to the infeed conveyor;

a **collating unit conveyor** mounted on the base; and

    **a frame substantially surrounding and covering the infeed conveyor and the collating unit conveyor**;
    wherein the infeed conveyor is an outfeed conveyor of the automatic dispensing system; and
    wherein the frame includes is longitudinal slot extending a length of the collating unit and formed within the frame such that when the frame is positioned over the infeed and collating unit conveyors, the <u>longitudinal slot</u> is generally positioned over the infeed conveyor.

. . . .

8.  A **collating unit for automatically storing prescription containers dispensed by an automatic dispensing system**, the collating unit comprising:
    an infeed conveyor for transporting the containers from the automatic dispensing system to the collating unit;
    a **collating unit conveyor** positioned generally adjacent to the infeed conveyor;
    **a frame substantially surrounding and covering the infeed conveyor and the collating unit conveyor**;
    **a plurality of holding areas formed within the frame** for holding the containers;
    a plurality of guide arms mounted between the infeed conveyor and the collating unit conveyor and operable to maneuver the containers from the infeed conveyor into the plurality of holding areas; and
    a **control system for controlling operation of the infeed conveyor, the collating unit conveyor, and the plurality of guide arms**.

## IV. Claim Construction

In light of the standards guiding this court, the court finds that it is unnecessary to *adopt* dictionary definitions for the twelve terms pinpointed by ScriptPro. These terms can be understood by the court and by lay people by their ordinary meaning. The court need not address each of these terms. However, to the extent the meanings of these terms are disputed as used within the six claim terms or phrases identified by Innovation, they do require construction. They are in dispute and appear to be at the crux of this case. The court has thoroughly reviewed the briefing and exhibits filed in this case, and is prepared to make its rulings.

•   **"Collating unit for automatically storing prescription containers dispensed by an**

**automatic dispensing system**"[1]

Innovation proposes that this term, as found in Claims 1, 2, 4, and 8, be defined as "[a]n independent collating device used with a control center, and separate from an ADS, that automatically stores prescription containers." (Doc. 123, at 12.) ScriptPro disagrees with the proposed construction on the basis that it imports an unjustified limitation. The court agrees with ScriptPro. The language of the claim does not suggest that the collating unit be "independent" and "separate from" an ADS. Indeed, the invention is intended to be integrated with an ADS, and would not serve its intended function as a standalone device.

However, to the extent Innovation's proposed construction is intended to convey that the patented invention is only for a collating unit, not a new ADS/collating unit in one, the court acknowledges Innovation's position. It would be misleading for ScriptPro to argue otherwise to the jury.

The distinction may be a subtle one. The patent contemplates the collating units either to be integrated with existing prior art control centers; or to be manufactured with their own control center. Either type of collating unit must necessarily be integrated with the control center of the ADS. (Doc. 97-1, at 13, col. 4) ("[T]he present invention provides a collating unit that may be used with an existing static control center"); (*Id*.) ("[P]rior art control centers may be manufactured with the collating unit, as opposed to the above-described incorporation of the collating unit with the existing control center."); (*Id*.) ("The collating unit may be mounted in an opening formed in a counter top of an existing control center or, alternatively, a control center may be manufactured with the collating unit."); (*Id*. at 14, col. 6) ("[T]he collating unit may be used with an existing control

---

[1] There are variations in the wording of this term in Claim 1, as opposed to claims 2, 4, & 8. The parties do not appear to dispute that, despite the variation in wording, the term is the same and for purposes of construction means essentially the same thing in each claim.

center and is relatively inexpensive, thus providing a pharmacy with an inexpensive, easy-to-install solution for collating and storing prescription containers . . . dispensed from an [ADS]."); (*Id.* at 19, col. 15) ("[P]rior art control centers may be manufactured with the collating unit, as opposed to the above-described incorporation of the collating unit with the exiting control center.").

Indeed, the background section describes the prior art (ADSs and their control centers – either static or automated) and sets out the need for an automated storage unit configured to be easily used with an existing static control center, and for one that automatically stores containers dispensed by ADSs. The patented invention is, by its name, a "collating unit for use with a control center cooperating with an [ADS]." (*Id.* at 2.) The description of the preferred embodiments teaches that "the present invention cooperates with the ADS" and notes that "[v]arious aspects of ADSs are embodied in U.S. Pat. Nos. 5,337,919, 5,713,487, and 5,762,235, and U.S. patent application Ser. No. 09/457,286, all of which are hereby incorporated by reference." (Doc. 128-5, at 35, col. 7.) There are other patented collating units. (*See* Doc. 128-6, at 70–71) (comparing the '601 patent to prior art patents, patent reexaminer noted that prior art teaches collating units, but the recited frame in '601 is the patentable invention because the prior art collating units could not be easily modified to include such a frame)

Therefore, because the invention is used with an ADS, *i.e.*, it is added on to, or integrated or incorporated with an ADS, it is not "separate" or "independent" from it. Similarly, the invention may be used with an existing control center, or it may be manufactured with a control center, and is therefore not necessarily "separate" or "independent" from it. With this understanding, the court rejects Innovation's proposed construction. However, the court acknowledges that the patent describes "a collating unit" for use with a control center, not an ADS/collating unit in one. The court believes that the portion of the term describing the collating unit's function or purpose as that

-9-

of automatically storing prescription containers dispensed by an ADS is clear on its face and does not need special construction. The court finds that, to a person of ordinary skill in the art at the time of the invention, the term "collating unit for automatically storing prescription containers dispensed by an automatic dispensing system" as used in the '601 patent means "a collating device, used with a control center, capable of automatically storing prescription containers dispensed by an ADS."

- **"Mounted within the storage unit"**

Innovation proposes that this term, as found in Claims 1, 2, and 4, be defined as "separate from the dispensing unit and attached only to the storage unit." (Doc. 123, at 15.) Script Pro argues the term "mounted within" means "mounted within," with no additional limitations, and that the parties do not dispute the term "storage unit." The court will not construe "mounted within" to mean "separate from the dispensing unit and attached only to . . ." Innovation's proposed construction attempts to import a limitation that is not justified by the language of the patent. The court agrees that the patent teaches that the guide arms are part of the collating unit. But the court does not believe that a natural reading supports limiting the guide arms from being attached to anything else. For instance, in the preferred embodiment, "the infeed conveyor 16" for the collating unit is "preferably" the "outfeed conveyor 31 of the ADS 14"; the infeed conveyor "includes a conveyor base 40"; and the "plurality of guide arms are mounted on the base." (Doc. 97-1, at 15–16, cols. 8, 10.) Based on its review of the claims, the specification, and prosecution history, the court finds that, to a person of ordinary skill in the art at the time of the invention, the term "mounted within the storage unit" would have its ordinary meaning. The court does not find ambiguity in this term; certainly none that would require the construction proposed by Innovation.

- **"A control system for controlling operation of . . ."**

Innovation proposes that this term, as found in Claims 1, 2, 4, and 8, be defined as "a

computer running software that receives data from and gives commands to the infeed conveyor and the plurality of guide arms." (Doc. 123, at 17.) The invention is described as having a control system, "which includes a computing device, such as a computer" and also "an infeed conveyor controller, a collating unit conveyor controller, a guide arm controller for each guide arm, a sensor controller for each sensor, a central sensor controller, an input device, an indicia reader, and at least one display, such as a computer monitor." (Doc. 97-1, at 14, col. 5.) To the extent the language of the claim refers to "a control system for controlling operation of . . .," the court does not believe it is appropriate to limit this term to mean "a computer running software that receives data from and give commands to . . . ." In fact, the description of the patented device supports a construction that would read the term "a control system" as something that *may* include a computer but which may also include *more* than a computer. For instance, the term "control system" could refer not only to a computer but also to an interconnected network of mechanical devices controlling the actions of the conveyors, guide arms, and sensors; as well as readers or scanners, screens or monitors, and input devices. This interpretation is supported by the diagram contained in Figure 6 of the '601 patent, which is a schematic of the many components of the collating unit's control system. (Doc. 97-1, at 9; 15, col. 7.) Based on its review of the claims, the specification, and prosecution history, the court finds that, to a person of ordinary skill in the art at the time of the invention, the term "a control system for controlling operation of . . . " would have its ordinary meaning and should not be limited as Innovation suggests.

- **"A plurality of holding areas formed within the [storage unit/frame]"[2]**

---

[2] As with the first term, there are variations in Claims 1, 2, and 4, which describe "a plurality of holding areas formed within the storage unit," and Claim 8, which describes "a plurality of holding areas formed within the frame." Innovation argues that the differences are not significant to
(continued...)

Innovation proposes that this term, as found in Claims 1, 2, and 4 be defined as "more than one holding area within the storage unit that intersects the infeed conveyor at less than 90 degrees." (Doc. 123, at 20.)

At the outset, the court would reject Innovation's proposed construction to the extent it omits the word "formed." The inclusion of the word "formed" within any construction of this term is, according to the PTO, "key." (Doc. 128-6, at 70.) In determining that the prior art patents and printed publications in the reexamination request do not fairly suggest the invention recited in the challenged claims of the '601 patent, the patent reexaminer found this feature—holding areas formed within the frame—to be significant. Specifically, in the "Statement of Reasons for Patentability and/or Confirmation," the reexaminer states:

> "independent claims 1, 2, 4, 8, and 13 recite 'a frame substantially surrounding and covering the infeed conveyor and the collating unit conveyor; a plurality of holding areas *formed within the frame* for holding the containers' [(emphasis added by PTO) (quoting Doc. 97-1, at 19, col. 15.)]. This feature is clearly shown in Figs. 1 and 2 of [the '601 patent]. The prior art does not teach or fairly suggest this feature. Furthermore, it would not have been obvious to modify the prior art devices of so that the plurality of holding areas a formed *within* the frame . . ."

(Doc. 128-6, at 68.) According to the PTO, the "key, patentable language [is] a plurality of holding areas being formed within [the frame/the storage unit] for holding the containers." (*Id.*, at 70.) Therefore, any construction must include the word "formed."

The court next turns to whether any construction of this term should include a requirement that the holding areas formed within the frame be formed at an angle of less than 90 degrees.

The court acknowledges the basis for Innovation's argument. Indeed, in the summary of the invention, the patent teaches that "[e]ach holding area is positioned generally transverse to the

---

² (...continued)
the dispute. ScriptPro disagrees. The court addresses them independently.

longitudinal slot at an angle less than 90°to the longitudinal slot." (Doc. 97-1, at 13, col. 4.)

In the preferred embodiment, the patent teaches that,

> [i]n preferable form, the frame 21 includes six holding areas 22 generally arranged parallel to each other . . . . Importantly, the holding areas 22 are preferably formed at an angle less than 90° to the longitudinal slot 72, as opposed to the holding areas 22 being formed substantially perpendicular to the longitudinal slot, 72.

(Doc. 97-1, at 16, col. 9.) The purpose of this angle is so that, when prescription containers exiting the ADS move through the collating unit and into a holding area formed at an angle within the frame, "forward movement of the collating unit conveyor 20 moves the container proximate to the closed end 82 of the holding area 22." (Doc. 97-1, at 17, col. 12.)[3]

Despite this language, the disputed claims themselves do not contain the "less than 90 degree" requirement. And Claims 6 and 12, which are not in issue in this case, do. Claim 6, which depends from Claims 1, 2, 4, and 5, explicitly supplies the limitation that "each holding area is formed in the frame at an angle less than 90 with respect to the longitudinal slot." (Doc. 97-1, at 19, col. 16.) Claim 12, which depends from Claims 8, 9, and 10, explicitly adds the same limitation. (Doc. 97-1, at 19, col. 16; at 20, col. 17.) This, for the court, is significant. Under the doctrine of claim differentiation, each claim in a patent is presumptively different. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). The doctrine is based on the common-sense notion that different words or phrases used in separate patent claims are presumed to indicate that the claims have different meanings and scope. *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999). Application of the doctrine prevents the narrowing of broad

---

[3] In support of its position, ScriptPro asserts that its provisional application contemplated holding areas at 90 degrees. ScriptPro includes a diagram of a figure with a citation to Exhibit E. Based on the court's review, this figure, (at Doc. 128-15, at 5), appears in the provisional application only to show the "footprint" of the system, *i.e.*, where the collating unit would be placed on an existing control center. The court finds that this figure holds little weight in the analysis.

-13-

claims by reading into them the limitations of narrow claims. *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000). In other words, the presence of the "less than 90 degree" limitation in the dependent claims gives rise to a presumption that the limitation in question is not present in—and should not be imposed on—the independent claim. *See Phillips*, 415 F.3d at 1315. The court therefore rejects Innovation's proposed construction.

Although the language appearing in the summary and preferred embodiment may support Innovation's invalidity argument, this language does not require the court to adopt Innovation's proposed construction as to the challenged claims. The court will not construe this term to include a limitation that the holding areas must intersect the infeed conveyor at less than 90 degrees.

For the same reasons, the court rejects Innovation's proposal that the term, as found in claim 8, be defined as "more than one holding area within the frame that intersects the infeed conveyor at less than 90 degrees." Based on its review of the claims, the specification, and prosecution history, the court finds that, to a person of ordinary skill in the art at the time of the invention, the term "a plurality of holding areas formed within the storage unit" means "more than one holding area formed within the storage unit."

- **"Collating unit conveyor"**

Innovation proposes that this term, as found in Claims 2, 4, and 8, be defined as "a single conveyor moving in the same direction as the infeed conveyor that moves prescription vials in the plurality of holding areas." (Doc. 123, at 22.) ScriptPro objects to the proposed construction, asserting that the "collating unit conveyor" may be, but need not be, one single conveyor. The court agrees, and rejects the proposed construction. Based on its review of the claims, the specification, and prosecution history, the court finds that a person of ordinary skill in the art at the time of the invention the term "collating unit conveyor" would have its ordinary meaning. The court does not

claims by reading into them the limitations of narrow claims. *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000). In other words, the presence of the "less than 90 degree" limitation in the dependent claims gives rise to a presumption that the limitation in question is not present in—and should not be imposed on—the independent claim. *See Phillips*, 415 F.3d at 1315. The court therefore rejects Innovation's proposed construction.

Although the language appearing in the summary and preferred embodiment may support Innovation's invalidity argument, this language does not require the court to adopt Innovation's proposed construction as to the challenged claims. The court will not construe this term to include a limitation that the holding areas must intersect the infeed conveyor at less than 90 degrees.

For the same reasons, the court rejects Innovation's proposal that the term, as found in claim 8, be defined as "more than one holding area within the frame that intersects the infeed conveyor at less than 90 degrees." Based on its review of the claims, the specification, and prosecution history, the court finds that, to a person of ordinary skill in the art at the time of the invention, the term "a plurality of holding areas formed within the storage unit" means "more than one holding area formed within the storage unit."

- **"Collating unit conveyor"**

Innovation proposes that this term, as found in Claims 2, 4, and 8, be defined as "a single conveyor moving in the same direction as the infeed conveyor that moves prescription vials in the plurality of holding areas." (Doc. 123, at 22.) ScriptPro objects to the proposed construction, asserting that the "collating unit conveyor" may be, but need not be, one single conveyor. The court agrees, and rejects the proposed construction. Based on its review of the claims, the specification, and prosecution history, the court finds that a person of ordinary skill in the art at the time of the invention the term "collating unit conveyor" would have its ordinary meaning. The court does not

claims by reading into them the limitations of narrow claims. *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000). In other words, the presence of the "less than 90 degree" limitation in the dependent claims gives rise to a presumption that the limitation in question is not present in—and should not be imposed on—the independent claim. *See Phillips*, 415 F.3d at 1315. The court therefore rejects Innovation's proposed construction.

Although the language appearing in the summary and preferred embodiment may support Innovation's invalidity argument, this language does not require the court to adopt Innovation's proposed construction as to the challenged claims. The court will not construe this term to include a limitation that the holding areas must intersect the infeed conveyor at less than 90 degrees.

For the same reasons, the court rejects Innovation's proposal that the term, as found in claim 8, be defined as "more than one holding area within the frame that intersects the infeed conveyor at less than 90 degrees." Based on its review of the claims, the specification, and prosecution history, the court finds that, to a person of ordinary skill in the art at the time of the invention, the term "a plurality of holding areas formed within the storage unit" means "more than one holding area formed within the storage unit."

- **"Collating unit conveyor"**

Innovation proposes that this term, as found in Claims 2, 4, and 8, be defined as "a single conveyor moving in the same direction as the infeed conveyor that moves prescription vials in the plurality of holding areas." (Doc. 123, at 22.) ScriptPro objects to the proposed construction, asserting that the "collating unit conveyor" may be, but need not be, one single conveyor. The court agrees, and rejects the proposed construction. Based on its review of the claims, the specification, and prosecution history, the court finds that a person of ordinary skill in the art at the time of the invention the term "collating unit conveyor" would have its ordinary meaning. The court does not

find ambiguity in this term, and a natural reading of this claim term does not support importing the limitations proposed.

- **"A frame [raised above/substantially surrounding/and covering] a conveyor"**

Innovation proposes that the term "substantially surrounding" as used in Claims 1, 2, 4, and 8 be defined as "surrounding except as to allow the passage of prescription containers"; and that the term "substantially covering" as found in Claims 2, 4, and 8, be defined as "covering except as to the path taken by prescription containers." (Doc. 123, at 24.) The court finds that there is no need for the more descriptive—potentially limiting—definition Innovation proposes. Indeed, the PTO specifically approved this language in the amended claim, noting that "a frame raised above and substantially surrounding at least a portion of at least one of the infeed conveyor or another conveyor, the plurality of holding areas being formed within the frame for holding the plurality of prescription containers" was not taught by prior art, and was not an obvious modification. (Doc. 128-6, at 61–67.) Indeed, as mentioned previously, this was "the key, patentable language." (*Id.*, at 70.) Based on its review of the claims, the specification, and prosecution history, the court finds that, to a person of ordinary skill in the art at the time of the invention, the terms "substantially" and "surrounding" carry their ordinary meanings, and that no limitations or exceptions need to be imposed on them in order to understand the terms as used in the claim.

**IT IS THEREFORE ORDERED** that ScriptPro's Motion to Strike, or in the Alternative, Motion to Accept Additional Briefing (Doc. 141) is denied.

**IT IS FURTHER ORDERED** that certain terms in the patent at issue in this action are construed as set forth herein.

Dated this 26th day of April 2011, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**