## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCRIPTPRO LLC, et al.,                      ) | |
|                                             ) | |
|        **Plaintiffs,**            ) | |
|                                             ) | |
| **v.**                                      ) | |
|                                             )   **No. 06-2468-CM** | |
|                                             ) | |
| INNOVATION ASSOCIATES, INC.,                ) | |
|                                             ) | |
|        **Defendant.**            ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiffs ScriptPro, LLC, and ScriptPro USA, Inc. (collectively "ScriptPro") bring this action alleging that defendant Innovation Associates, Inc. ("Innovation"), infringes on ScriptPro's patent. (Doc. 89.)  Innovation counterclaims for a declaratory judgment of invalidity, noninfringement and/or unenforceability as to the patent, and also alleges tortious interference with prospective and existing business relations and unfair trade practices.  (Doc. 113.)  In an Order dated April 26, 2011, the court construed a number of terms that the parties believed to be in issue.  (Doc. 146.)  Now before the court are the following motions:

- Plaintiff's Motion to Strike the Rebuttal Expert Designation by Innovation Associates, Inc. of Jason A. Janet (Doc. 245);

- Defendant Innovation Associates, Inc.'s Motion to Limit Testimony and for Attorney's Fees (Doc. 254);

- Defendant Innovation Associates, Inc.'s Motion to Exclude Shawn Fox's Testimony on Patent Infringement Damages (Doc. 282); and

- The parties' cross-motions for summary judgment (defendant's motion, Doc. 271; plaintiff's motion, Doc. 274).

- The parties' Joint Motion for Special Trial Setting (Doc. 308)

- Defendant Innovation Associates, Inc.'s Motion for Extension of Time to File Summary Judgment Motion on the Issue of Willfulness (Doc. 309) and Motion (Doc. 310).

The court rules on the motions in the following manner.

## I.  General Factual and Procedural Background[1]

As set out in the court's previous order, both ScriptPro and Innovation sell robots that automatically fill prescriptions for pharmacies (Automatic Dispensing Systems, or ADSs).

ScriptPro holds a patent for and sells a "collating unit" that attaches to an ADS and sorts output into holding areas grouped by patient or other identifying information.  Patent No. 6,910,601 ("the '601 patent"), entitled "Collating Unit for Use With a Control Center Cooperating With an Automatic Prescription or Pharmaceutical Dispensing System," was issued on June 28, 2005, to ScriptPro.  ScriptPro asserts that Innovation's robot, ROBOTx, infringes on its patent; specifically, on claims 1, 2, 4, and 8.

Shortly after ScriptPro filed this lawsuit, Innovation initiated Inter Partes Reexamination No. 95/000,292 with respect to the '601 patent, and the case was stayed from May 2007 until July 2010. An Inter Partes Reexamination Certificate was issued with respect to the '601 patent on January 4,

---

[1]  The court construes the facts in the light most favorable to the nonmoving party pursuant to Fed. R. Civ. P. 56.  The court reviewed the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.  The court includes specific facts as necessary in its discussion of the arguments.

2011.

Through reexamination, claim 4 was rewritten in independent form but was not amended substantively.  Independent claims 1 and 2 were substantively amended.

## II.    Standards

A patent infringement analysis involves two steps: (1) construing the meaning and scope of the claims and (2) comparing the construed claims to the device accused of infringing.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  The court issued a claim construction order on April 26, 2011.  (Doc. 146.)  This matter is currently before the court on cross-motions for summary judgment.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Id.* at 670–71.  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary

judgment).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671 (internal citations and quotations omitted).  The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come forward with significant admissible probative evidence supporting that party's allegations.  *Anderson*, 477 U.S. at 256.

The filing of cross-motions for summary judgment does not change the standard of review. *James Barlow Family Ltd. P'ship v. David M. Munson Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) ("Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.").

## III.    Defendant Innovation's Motion

Defendant seeks summary judgment as to the following issues:

- Innovation is not estopped from pursuing invalidity

  (a) pursuant to 35 U.S.C. § 112 for lack of written description and enablement, and

  that the claims are invalid for lack of written description;

  (b) that the asserted claims are invalid as anticipated and/or obvious in light of the

  SI/Baker High Volume Fill System, and

- Innovation is entitled to absolute intervening rights on claims 1 and 2, barring

  ScriptPro from recovering infringement damages on those claims prior to January 4,

  2011;

- correcting two minor typographical errors in reexamined claim 4;

- non-infringement on claims 4 and 8, as well as non-infringement under the doctrine of

equivalents; and

- ScriptPro's damage claim in its entirety.

The court ultimately grants summary judgment in favor of Innovation and against ScriptPro on the subject of invalidity, based on its determination that Innovation is not estopped from pursuing invalidity pursuant to § 112, and that the claims fail to satisfy the written-description requirement.  In light of this ruling, the court does not address the remainder of Innovation's arguments.

### A.    Estoppel on § 112 Challenges

The parties stipulate that Innovation is not estopped by 35 U.S.C. § 315(c) from asserting that claims 4 and 8 are invalid for failing to comply with the written description and enablement requirements of 35 U.S.C. § 112.  (Doc. 279 at 4.)  However, ScriptPro contests Innovation's ability to challenge the validity of claims 1 and 2 for alleged lack of written description and enablement. ScriptPro argues that Innovation was free to—and did— raise § 112 challenges during reexamination and, having had that opportunity, is estopped by § 315(c) from raising them now.

The applicable standard is not disputed: the Patent Act provides that a third party such as Innovation, who requests inter partes reexamination "is estopped from asserting at a later time, in any civil action . . . the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings."  35 U.S.C. § 315(c).  The court must determine whether, as a matter of law, Innovation is precluded from asserting invalidity as to claims 1 and 2 based on lack of written description and enablement.

There is no dispute that claims 1 and 2 were substantively amended during reexamination to overcome prior art.  There is also no dispute that the amendments did not delete from original claims

1 and 2 any claim limitation requiring a plurality of sensors.[2]  Innovation notes that a third party can request inter partes reexamination only "on the basis of any prior art cited under the provisions of section 301."  *Id*. § 311.  And "other matters, such as public use or sale, . . . 35 U.S.C. 112 . . . will not be considered when making the determination on the request and should not be presented in the request."  MPEP § 2617.  The Patent and Trademark Office ("PTO") only examines § 112 requirements as to claim language added during reexamination that is different from original claim language and any language deleted from a claim during reexamination.  MPEP § 2258 (37 C.F.R. § 1.552) (noting that "a claim which is amended or a new claim which is presented containing a limitation not found in the original patent claim should be considered for compliance under 35 U.S.C. 112 only with respect to that limitation").  In other words, Innovation could not have raised § 112 claims based on the lack of a limitation requiring sensors because the reexamination did not encompass this language (or lack thereof).

The Patent Act is clear about what can be raised in reexamination.  And based on the summary judgment record, this § 112 argument could not have been raised.  Innovation is therefore not estopped from raising it now.  The court turns to address Innovation's argument that it is entitled to summary judgment that the claims lack written description.

### B.       Invalid for Lack of Written Description

The written-description requirement is contained in Section 112 of the Patent Act.  The first paragraph of that section provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is

---

[2]  No party suggests that the sensorless language of the claims as originally filed can alone satisfy the written description requirement.

most nearly connected, to make and use the same, and shall set forth the best mode
contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112.  A patent claim is therefore invalid unless the disclosure in the specification

"clearly allow[s] a person of ordinary skill in the art to recognize that the inventor invented what

is claimed."  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)

(internal quotation marks omitted).  The written description "must convey with reasonable clarity . . .

that, as of the filing date sought, [the patentee] was in possession of the invention."  *Carnegie*

*Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (internal quotation

marks omitted).  Determining whether the written-description requirement is met requires an

objective inquiry into the four corners of the specification from the perspective of a person of

ordinary skill in the art.  *Ariad*, 598 F.3d at 1351.  To succeed on an invalidity claim, the accused

must show by clear and convincing evidence that the claims lack written description.  *Hynix*

*Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011); *Ariad*, 599 F.3d at 1354.

The sufficiency of a patent's written description is ordinarily a question of fact, but "[a]

patent also can be held invalid [as a matter of law] for failure to meet the written description

requirement based solely on the face of the patent specification."  *Centocor Ortho Biotech, Inc. v.*

*Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011); *see also Ariad*, 598 F.3d at 1355 (holding that a

determination that a patent is invalid for failure to meet the written description requirement is a

question of fact).

Innovation argues that the asserted claims are invalid under § 112 for lack of written

description because, although the specification indicates that the inventors were in possession of an

invention that automatically stores containers by utilizing sensors, claims 1, 2, 4, and 8 (original and

reexamined) broadly cover a collating unit with or without sensors.  (Doc. 275 at 40.)  In support,

Innovation relies on the '601 patent itself, and the report of its expert, Dr. Jason Janet.  Particularly, Innovation notes that the specification repeatedly describes the "present invention" as a collating unit with sensors; a portion of the specification describes the integral role sensors play in storing containers in the holding area; and the described embodiments include a plurality of sensors.  The summary of the invention uses mandatory language when describing the existence and role of sensors, but employs optional/preferable language when describing other components.  (Doc. 290-5 at 23.)  In his report, Dr. Janet states "I cannot even identify a contemplation in the '601 specification of a collating unit for automatically storing prescription containers that does not employ sensors." (Doc. 290-5 at 27.)  He goes on to opine that

> [t]he specification of the '601 patent conveys to one of ordinary skill in the art that the patentees invented a collating unit for automatically storing prescription containers that employs sensors. . . . As such, it is my opinion that after reading the specification of the '601 patent, one of ordinary skill in the art would not understand the patentees to have invented a collating unit that automatically stored prescription containers without the use of sensors. . . . Because claims 1, 2, 4, and 8 are broader than the invention disclosed in the specification in that they do not require sensors, it is my opinion that there is no written description for these claims.

(Doc. 290-5 at 28.)

ScriptPro, on the other hand, asserts that sensors are not necessarily present or required, and that there are other structures disclosed in the specification that could make the determination of whether an object is stored in the collating unit.[3]  ScriptPro asserts that alternative structures for performing these functions include a database inside memory, an input device, and/or an indicia reader.  ScriptPro points to Fig. 6 of the '601 patent for support.  (*See* Doc. 273-1 at 9.)  But Fig. 6 does not provide self-explanatory support for ScriptPro's position:  It is a schematic of the

---

[3]  ScriptPro does not suggest that the sensorless language of the claims as originally filed can, alone, satisfy the written description requirement.  See, e.g., Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 968–69 (Fed. Cir. 2002).

components of a control system which, according to the written description, "controls operation of the . . . plurality of sensors . . . [and] includes a computing device, . . . a sensor controller for each sensor, [and] a central sensor controller."  (Doc. 273-1 at 14, col. 5, ll. 1–7.)

ScriptPro maintains that there is disclosure in the '601 patent specification of a collating unit that does not require sensors.  (Doc. 291 at 5 (citing the '601 patent, Doc. 273-1, at col. 5, ll. 64–67; col. 12, ll. 6–11 & 28–30; col. 14, ll. 32–39).)  But a review of the language cited by ScriptPro does not clearly describe or suggest a unit without sensors.  Column 5, lines 64–67 state: "Based on the speed of the infeed conveyor and the sensor sensing the presence of the container, the control system knows when the container is positioned at the opening of the holding area."  Column 12, lines 6–11 states: "If the sensors 26 determine that an object is located in the collating unit 10, such information is transmitted to the control system 28 via the central sensor controller 102, and the control system 28 instructs an error message to be displayed on the display 108, as depicted in Box 7B."  Lines 28–30 state: "The sensor 26 positioned at the open end 80 of the holding area 22 is then instructed to confirm that the container is located at the open end 80 of the holding area."  Column 14, lines 32–39 states: "As a security feature, after retrieval of the containers from the holding area 22, the sensors 26 positioned at the open and closed ends 80, 82 of the holding area 22, determine if any container is located in the area 22.  If a container is located in the holding area 22, the control system 28 instructs an error message to be displayed on the display 108."

ScriptPro argues that claims 1, 2, 4, and 8 are directed at storing, and although sensors may be relevant to the features in claims 1, 2, 4, and 8, sensors are not necessary for storing.  Sensors are, however, claimed in claims 7, 9, 13, 20, and 21.  ScriptPro suggests that this illustrates that the inventors did not simply overlook sensors, but purposefully omitted them from claims 1, 2, 4, and 8.  Whether the omission was purposeful or inadvertent is immaterial.

Each party is prepared to offer expert testimony in support of its argument.  According to Dr. Janet's sworn declaration, the claims of the '601 patent are invalid for failing to satisfy the written description requirement.  (Doc. 273-4 at 2; Doc. 290-5 at 6–7.)  His initial expert report supports this opinion, and suggests, based on his review of the '601 patent and the court's claim construction order, that as of the filing date, the patent specification fails to convey with reasonable clarity to one of ordinary skill in the art that the inventor was in possession of the claimed invention.  (Doc. 290-5 at 20–28.)

ScriptPro's expert, Terry Faddis, opined in his report that:

it is clear from the written description of the '601 Patent that sensors are not required to practice the claimed invention.  For example the control system for the collating unit could simply keep track, in memory, what storage locations are available and simply route the appropriate prescriptions to these locations.  Figure 6 shows the input device 104, the indicia reader 106, the sensor controller 100 and the central sensor controller 102 providing input to the computing device 92.  In column 12, lines 6–17 and lines 28–36 the sensors are used to provide error and confirmation indications for the collating unit.  Based on the above, one of ordinary skill in the art would understand that the inventors had a collating device that was operable without sensors, but could use sensors to confirm operating status.

(Doc. 291-1 at 5–6.)

When asked by opposing counsel in his deposition "Does the written description disclose how—anywhere in the written description—does it disclose how the system would detect whether a holding area's full without using sensors?," Dr. Faddis answered, "That's obvious.  You just store memory whether its's full or not.  It's simple."  (Doc. 291-7 at 3.)

Obviousness is not the proper test in determining whether a patent specification satisfies the written description requirement.  *See Ariad*, 598 F.3d at 1352 (citing *Lockwood v. Am. Airlines*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997)).  The test is whether, as of the filing date, the patent specification conveys with reasonable clarity to one of ordinary skill in the art that the inventor was

-10-

in possession of the claimed invention.

Dr. Faddis' 11-page report disagreeing with Janet's opinion on invalidity is not sworn under penalty of perjury and is not accompanied by any sworn affidavit or declaration. *See Winstead v. Georgia Gulf Corp.*, 77 F. App'x 267 (5th Cir. 2003) (holding that preliminary expert reports were not competent summary judgment evidence where reports were neither sworn nor verified); *Sigler v. Amer. Honda Motor Co.*, 532 F.3d 469, 480–81 (6th Cir. 2008) (holding that the district court improperly considered three unsworn expert reports when ruling on a motion for summary judgment; *see also* 12 James Wm. Moore *et al.*, Moore's Federal Practice, p. 60.42(6), n.11 (3d ed. 1997) (stating that "unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment.").

Even if the court considers his report as evidence for purposes of Rule 56, his opinions therein—as in his deposition testimony—are entirely conclusory and only offer an opinion on the ultimate legal issue that is not helpful to the jury. *See Dynacore Hldgs. Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004) (stating "[i]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact").

Additionally, Dr. Faddis fails to tie his conclusory opinion—that one skilled in the art would understand that the device described could operate without sensors—to the critical time-frame: the date of filing. *See, e.g.*, *Ariad*, 598 F.3d at 1355 (holding that, "[b]ecause written description is determined as of the filing date—April 21, 1989, in this case—evidence of what one of ordinary skill in the art knew in 1990 or 1991 cannot provide substantial evidence to the jury that the asserted

-11-

claims were supported by adequate written description.").

ScriptPro does not bear the burden of proof on the assertion of invalidity. Indeed, that burden is Innovation's, and must be met by clear and convincing evidence because the patent is presumed to be valid. However, ScriptPro does bear the burden on summary judgment to set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. After a thorough review of the record, the court concludes that ScriptPro fails to meet this burden as to written description. Based on the record before it, the court concludes that no reasonable jury could find that the inventors were in possession of a collating unit that operated without sensors. Innovation is therefore entitled to summary judgment on its claim of invalidity as to all challenged claims.

## IV.    Plaintiff ScriptPro's Motion

ScriptPro seeks summary judgment:

- •    in its favor on its claims against Innovation for patent infringement; and

- •    in its favor and against Innovation on Innovation's counterclaims for tortious interference.

Because the court grants summary judgment for Innovation and against ScriptPro as to invalidity of the four asserted claims, the first portion of ScriptPro's motion is denied as moot. The court also denies the second portion of the motion based on its conclusion that ScriptPro is not entitled to summary judgment on Innovation's tortious interference claims.

### A.    Tortious Interference Claims

Innovation argues that these claims are governed by New York law, but ScriptPro asserts that Kansas law applies. For purposes of this motion at least, ScriptPro admits that there are no material differences between Kansas and New York law, and thus ScriptPro makes its summary judgment

arguments in the context of New York law, which Innovation argues is applicable.   (Doc. 280 at 50 n.4.)  Based on ScriptPro's position, the court will apply New York law.

While New York law recognizes two related torts— interference with prospective and existing contracts—greater protection is accorded an interest in an existing contract than to the less substantive, more speculative interest in a prospective relationship.  *See, e.g.*, *White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 867 N.E.2d 381 (N.Y. 2007).  For example, for interference with contract, wrongful means need not be proved, but for interference with prospective advantage, wrongful means are required.  *See NBT Bancorp Inc. v Fleet/Norstar Fin. Grp., Inc.*, 664 N.E.2d 492 (N.Y. 1996).

<u>Tortious Interference with Contract</u>

To establish tortious interference with contract, Innovation must prove: (1) the existence of a contract, enforceable by Innovation; (2) ScriptPro's knowledge of the existence of that contract; (3) the intentional procurement by ScriptPro of the breach of the contract without justification; and (4) the breach resulted in damages to Innovation.[4]  *See Ferrandino & Son, Inc., v. Wheaton Bldrs., Inc.*, LLC, 82 A.D.3d 1035, 1036 (N.Y. App. 2011); N.Y. Pattern Jury Instr. 3:56.

ScriptPro argues it is entitled to summary judgment on the claim because Innovation cannot produce evidence in support of the second, third, or fourth elements.  (Doc. 280 at 50.)

To satisfy the second element, Innovation must establish that ScriptPro had actual knowledge of Innovation's contracts.  *State Enterpr. Inc. v. Southridge Coop. Section 1, Inc.*, 18 A.D.2d 226, 227–28 (N.Y. App. 1963).  Knowledge is generally a question for the jury.  *Id*.  Here, ScriptPro

---

[4]  New York courts disagree as to whether defendant's actions must be the "but-for" cause of the breach, or merely a "substantial factor" for the breach.  Compare *Ferrandino & Son, Inc. v. Wheaton Bldrs., Inc., LLC*, 82 A.D.3d at 1036, to *Andrew Greenberg Inc. v. Sir-Tech Software, Inc.*, 245 A.D.2d 1004, 1005 (N.Y. App. 1997).

argues that Innovation fails to demonstrate a genuine issue of fact regarding this element. Although

there is evidence that ScriptPro representatives contacted individuals associated with certain of

Innovation's clients attempting to dissuade them from doing business with Innovation, there is no

allegation that ScriptPro knew that Innovation had contracts with these individuals/companies.

However, Innovation is entitled to all reasonable inferences flowing from the facts. And Innovation

argues that ScriptPro's knowledge can be inferred from the temporal proximity of ScriptPro's

conduct in relation to the deals at issue. The court agrees. The evidence suggests that a number of

deals were on the verge of being closed when ScriptPro representatives stepped in, and the deals fell

through shortly thereafter.

ScriptPro also argues that Innovation can produce no admissible evidence as to why

customers terminated their contracts with Innovation. Innovation acknowledges that its evidence is

largely based on the testimony of Doyle Jensen, Innovation's Vice-President of Global Business

Development, and Mary Reno, Innovation's Chief Executive Officer. The parties dispute the

admissibility of this testimony. Innovation did not depose any of the clients, but it did disclose them

as potential trial witnesses, and asserts that it can and will call them depending on the court's

evidentiary rulings. On review, the record contains emails from which a reasonable jury could infer

that certain customers may have terminated their contracts and/or relationships with Innovation

based on representations from ScriptPro.[5] And it appears there may be admissible evidence

supporting the causation element. Of course, to succeed at trial, Innovation must be able to present

---

[5] *See, e.g.,* Exs. D-4 and D-5 (Docs. 290-11; 290-12) regarding Lovelace; Ex. E-14 (Doc. 290-37) regarding Pharmasave; Exs. D-9 (Doc. 290-16) and E-4 (Doc. 290-27) regarding JPS Health; (Exs. D-6, D-7, D-8 (Docs. 290-13, 14 and 15) and E-3 (Doc. 290-26) regarding AmMed; Ex. E-1 (Doc. 290-24) regarding Safeway; Ex. D-15 (Doc. 290-22) regarding Tim's Pharmacy; and Ex. D-13 (290-20) regarding Daugherty's.

facts and inferences supporting each of the elements as to each (or at least one) particular customer. This is a close call.  But upon review of the record, the court believes that Innovation just survives summary judgment on its claim.

<u>Tortious Interference with Business Relationships/Prospective Economic Advantage</u>

To establish tortious interference with business relationships, Innovation must prove: (1) a prospective business relationship with a third party; (2) defendant knew about the prospective relationship; (3) defendant intentionally interfered with that relationship; (3) for the sole purpose of harming the plaintiff or by wrongful means;[6] and (4) this caused injury to the plaintiff.  *N. State Autobahn, Inc. v. Progressive Ins. Grp.*, 928 N.Y.S.2d 199, 205–06 (N.Y. App. 2011); *see also* N.Y. Pattern Jury Instr. 3:57.

ScriptPro focuses on the third and fourth elements, arguing that there is no evidence of "wrongful" conduct, nor is there evidence that ScriptPro's conduct caused Innovation any damages. Whether conduct is "wrongful" is a question of law for the court.  As a general rule, a defendant's conduct must amount to a crime or an independent tort.  *See, e.g., Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004).  Examples of the types of culpable conduct that would suffice include physical violence, fraud or misrepresentation, or malicious prosecution.  *See id.* (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980), and Restatement (Second) of Torts § 768).  Civil suits and threats thereof constitute wrongful means only if such tactics are frivolous, which is not the case here.  *See Pagliaccio v. Holborn Corp.*, 289 A.D. 2d 85 (N.Y. App. 2001).  Competitive marketing and persuasion alone do not rise to the level of

---

[6] Only the "wrongful" element is implicated here, as opposed to the "sole purpose" element. A party does not act for the sole purpose of harming another when it has another reason, such as promoting its own business.  Here, ScriptPro indisputably had an economic self-interest motivating its conduct.  *See Carvel*, 818 N.E.2d at 1103.

wrongful or culpable means. *See Guard-Life*, 406 N.E.2d at 449.

Based on this court's review of the case law, whether a "misrepresentation" constitutes the kind of culpable conduct required to satisfy the "wrongful" requirement may be a matter of degree. For instance, a former employer did not engage in wrongful conduct, as required to support former employee's tortious interference claim, where former employer sent a letter to former employee's current employer alleging that the employee was in violation of covenants not to compete, where the employee was indeed in violation of such covenants. *Smith v. Meridian Techs., Inc.*, 86 A.D.3d 557, 559–60 (N.Y. App. 2011). However, where plaintiff automobile repair shop submitted evidence that a number of potential customers were convinced by defendant insurer to use its shops instead of plaintiff's shop by economic coercion and misrepresentations concerning plaintiff's shop, and by defendant insurer's commencement of an unsuccessful lawsuit against plaintiff, such evidence was sufficient to raise a question of fact for trial with respect to the identified lost customers. *N. State Autobahn, Inc. v. Progressive Ins. Grp.*, 928 N.Y.S.2d 199, 206–07 (N.Y. App. 2011); *see also Stork H & E Turbo Blading, Inc. v. Berry*, No. 2011-0373, 2011 WL 2611642, at *4 (N.Y. App. June 30, 2011 ) (plaintiff not entitled to injunctive relief on its tortious interference claim where there was "a sharply-disputed issue of fact with respect to the truth of the defendant's alleged statements"); *c.f. Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. Apr. 8, 2009 ) (noting "the New York Court of Appeals has never held that any misrepresentation to a third party is sufficient to sustain a claim for tortious interference with prospective economic relations.").

In response to ScriptPro's arguments, Innovation offers the testimony of its vice-president, Mr. Jensen, that as to certain of its customers or prospective customers, ScriptPro representatives made false and misleading statements such as telling customers that Innovation was losing or had

already lost this patent infringement lawsuit; and/or that their pharmacy or company would face

liability if they purchased from Innovation.  In support of Mr. Jensen's testimony, Innovation offers

documentary evidence in the form of emails from current and potential customers.

For instance, on September 21, 2010, Randall Ward from Tim's Pharmacy sent Innovation an

email from "Tim" containing the following:

> I was wondering if you could enlighten me on something. I have had ScriptPro
> knocking at my door lately. I have no intention of making such a move. But what
> bothers me is their tactics. They are slandering your company by saying they have a
> pending law suit against IA for impinging [*sic*] on one of their patents. They say if it
> goes through it may jeopardize our pharmacy. They are also using this same tactic on
> customers of yours that are debating on whether to go with your robotics or switch to
> theirs. They are very adamant and bold about this accusation. I talked to Mark at your
> office and he says that there is no validity to their accusations, I really don't care if
> they have a lawsuit or not. Even if there is a pending lawsuit they are unwise and
> unethical to be using it at this point when there has been no settlement in the case.
> They even said that IA has offered them a settlement of some kind but they would not
> take it. I thought you might want to know about this.

(Doc. 290-22 at 2.)

Also, in an email from Barry Peachment at Canada Safeway dated November 1, 2010, Mr.

Peachment copied a portion of an email he had received from a ScriptPro representative which

stated:

> CVS de-installed their counting technology cabinets from 641 of their stores .... 2
> years into a 5 year contract. The Innovation cells would break all the time and the
> stores found that it was easier to count than use their technology, Their robots use the
> exact same cells as their counting cabinets. More important, however, is that there is a
> pending lawsuit against Innovation Associates for patent infringement.

(Doc. 290-24 at 2.)

Julie Abernathy, at JPS Health Network, sent the following email to Innovation on November

30, 2009:

> I received an email from someone at ScriptPro. Can you explain below? Thanks.

You probably do not want to hear about the Patent Infringement
Litigation between ScriptPro and Innovation, but it is a matter of
public knowledge.
This has been ongoing quite some time and Innovation has tried to get
the courts to dismiss this action twice now, both unsuccessful. Our
attorney is 99% sure that our claim will be upheld by the courts. This
of course means that Innovation would have to quit selling, marketing,
promoting and servicing their robot. It would also mean that anyone
who purchased this product would be required by law to discontinue
the use of this robot. I can send you documentation to share with your
corporate lawyers if you like.

(Doc. 290-27 at 2.)

Joe Dickson at Pharmasave received this email dated November 25, 2009, from a ScriptPro

representative, which he forwarded to Innovation:

There are significant differences between ScriptPro robots and those of our
competitors, including Innovation Associates. I have attached a side-by-side
comparison here. The dispensing cells used in IA's robots are the same as those from
their counting technology cabinets. CVS, the largest chain in the US, de-installed
these counting cabinets in 641 of their stores, 3 years into a 5 year contract, because
they were so unhappy with the technology. They replaced them with ScriptPro
robots, and we continue to install with CVS.
There is also some legal information about which you should be aware regarding
Innovation Associates and their robotic system. I am forwarding to you an email with
6 attachments from ScriptPro's President and CEO, Mike Coughlin, regarding
ongoing litigation with Innovation Associates. ScriptPro claimed that IA's robotic
system infringed upon our patents, and from there they asked us to prove the validity
of our patents. ScriptPro has prevailed in their third and final
appeal with respect to the validity of the patents, so now we are waiting for a
judgment in the case.
    From: Mike Coughlin
    Sent: Tuesday, March 03, 2009 8:01 PM
    To: ScriptPro Department Managers; ScriptPro Sales & Marketing
    Subject: IA Patent Infringement Litigation
    Attached are the most current, pertinent public documents pertaining to
    ScriptPro's patent infringement litigation against Innovation
    Associates, Inc. These are highly technical documents, so I am not
    encouraging you to read them or try to understand them without
    competent legal advice.
    Some of you have customers or prospects whose legal advisors have
    inquired regarding the status of this litigation. I am sending these

-18-

> documents to you with permission to forward them on to such parties
> who may have a need to know in order to comply with their own
> obligations to not infringe patents as purchasers or users of infringing
> technologies.
> Thanks, Mike
>
> Choosing the right automation is critical for your pharmacy, and I urge you to truly
> evaluate whether IA is presenting you with "a good deal" in light of this information.

(Doc. 290-37 at 4.)

Finally, Brad Trom at Lovelace forwarded the following email to Innovation, which was one

of several he received from Mike Coughlin at ScriptPro, and which is dated December 3, 2009:

> Attached is ScriptPro's response to IA's latest attempt to delay the patent lawsuit. I
> don't think you will want to read the entire document. but the first page tells the story
> when it says:
>> "The Appellant's Appeal Brief is so deficient (both procedurally and
>> substantively, as addressed below), that Respondent respectfully
>> suggests the USPTO should consider whether it is an intentional
>> failure under MPEP 2675 to address the examiner's findings, or
>> whether it is merely an attempt to further extend this proceeding and
>> the related litigation which is being stayed-amounting to an
>> impermissible litigation tactic under MPEP 2609. Any relief that the
>> USPTO can provide to expedite this reexamination proceeding is
>> respectfully requested."
>
> The IA attorneys are grasping at straws to try to come up with new defenses since
> their previous defenses have been rejected. As pointed out by our attorneys, IA is
> appealing the decisions that have been made, and they can't start over with new
> defenses in an appellate process. They have dragged this on for years with these delay
> tactics. If you have customers who want an update on the status of this suit, you can
> send this to them. I think we are coming down the home stretch on getting justice on
> this patent violation. IA continues to sell the product. This runs up the potential
> liability of IA and their customers who are using the system in violation of ScriptPro's
> patent.
> Mike

(Doc. 290-11 at 2–3.)

The court finds that Innovation has come forward with evidence sufficient to create a triable

issue of fact concerning whether ScriptPro's conduct was wrongful as required by applicable law.

The court therefore denies summary judgment to ScriptPro as to this claim.

-19-

**V.**     **Plaintiff's Motion to Strike the Rebuttal Expert Designation by Innovation Associates, Inc. of Jason A. Janet (Doc. 245); Defendant Innovation Associates Inc.'s Motion to Limit Testimony and for Attorney's Fees (Doc. 254); Innovation Associates Inc.'s Motion to Exclude Shawn Fox's Testimony on Patent Infringement Damages (Doc. 282); the parties' Joint Motion for Special Trial Setting (Doc. 308); Defendant Innovation Associates, Inc.'s Motion for Extension of Time to File Summary Judgment Motion on the Issue of Willfulness (Doc. 309); and Defendant's Motion for Summary Judgment on the  Issue of Willfulness (Doc. 310)**

In light of the rulings in this Memorandum and Order, the court declines to address the arguments contained in these motions, and instead denies them as moot.  However, because Innovation's state law claims remain, the parties' Joint Motion for Special Trial Setting (Doc. 308) remains pending.

**IT IS THEREFORE ORDERED** that Defendant Innovation Associates Inc.'s Motion for Summary Judgment (Doc. 271) is granted as set forth above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 274) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Rebuttal Expert Designation by Innovation Associates, Inc. of Jason A. Janet (Doc. 245) is denied as moot.

**IT IS FURTHER ORDERED** that Defendant Innovation Associates Inc.'s Motion to Limit Testimony and for Attorney's Fees (Doc. 254) is denied as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Shawn Fox's Testimony on Patent Infringement Damages (Doc. 282) is denied as moot.

**IT IS FURTHER ORDERED** that the parties' Joint Motion for Special Trial Setting (Doc. 308) remains pending.

**IT IS FURTHER ORDERED** that Defendant Innovation Associates, Inc.'s Motion for Extension of Time to File Summary Judgment Motion on the Issue of Willfulness (Doc. 309) and Motion (Doc. 310) are denied as moot.

Dated this 26th day of June 2012, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**