IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SCRIPTPRO LLC,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**INNOVATION ASSOCIATES, INC.,** )<br>)<br>**Defendant.** )<br>_____) | Case No. 06-2468-CM |

### MEMORANDUM AND ORDER

This patent infringement case—originally filed in 2006—has a substantial history. Most recently, the Federal Circuit reversed this court's ruling that claims 1, 2, 4, and 8 of plaintiff ScriptPro LLC's patent were invalid for lack of an adequate written description. The Federal Circuit remanded the case for further proceedings. After remand, this court reinstated a number of motions that were pending before the appeal, and defendant Innovation Associates, Inc. filed another motion for summary judgment on the issue of invalidity (Doc. 410).

**I.     General Factual and Procedural Background**

As the court has previously explained, both ScriptPro and Innovation sell robots that automatically fill prescriptions for pharmacies (Automatic Dispensing Systems, or "ADSs"). ScriptPro holds a patent for and sells a "collating unit" that attaches to an ADS and sorts output into holding areas grouped by patient to the extent feasible. This patent—Patent No. 6,910,601 ("the '601 patent")—is named "Collating Unit for Use With a Control Center Cooperating With an Automatic Prescription or Pharmaceutical Dispensing System." ScriptPro claims that Innovation's robot, ROBOTx, infringes on claims 1, 2, 4, and 8 of its patent.

-1-

Shortly after ScriptPro filed this lawsuit, Innovation initiated Inter Partes Reexamination No. 95/000,292 with respect to the '601 patent, and the case was stayed from May 2007 until July 2010. An Inter Partes Reexamination Certificate was issued with respect to the '601 patent on January 4, 2011. Through reexamination, claim 4 was rewritten in independent form but was not amended substantively. Independent claims 1 and 2 were substantively amended.

This court previously held that the relevant claims lacked written description support. *ScriptPro LLC v. Innovation Assocs., Inc.*, No. 06-2468-CM, 2012 WL 2402778, at *7 (D. Kan. June 26, 2012), *rev'd*, 762 F.3d 1360 (Fed. Cir. 2014). To reach this decision, the court concluded that the specification describes a machine containing sensors, but Claims 1, 2, 4, and 8 addressed a machine that did not require sensors. *Id.* The Federal Circuit disagreed, holding that a skilled artisan could reasonably understand the specification to refer to optional sensors—as opposed to required sensors. *ScriptPro, LLC*, 762 F.3d at 1360.

## II.   Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id*. at 670–71. Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see Adler*, 144 F.3d at 671 n.1 (concerning shifting burdens on summary judgment).

### III.     Factual Background Specific to this Motion[1]

Resolution of this motion depends on language in the patent itself.  To help explain how ScriptPro's invention works, the court summarizes several portions of the '601 patent that discuss the process for storing prescription containers.

- **Prior Art Methods:**  The background of the invention indicates that "prior art automated control centers store the container based on a prescription number associated with the container, as opposed to storing the container based on a patient name for whom the container is intended."  (Doc. 402-1 at col.2 l.66–col.3 l.10.)

- **Collating Unit's Function:**  The invention's summary states that:

    the present invention provides a collating unit that may be used with an existing static control center to automatically store prescription containers, such as prescription vials and unit-of-use packages containing medicaments, exiting an ADS.  The unit stores prescription containers according to a storage algorithm that is dependent on a patient name for whom a container is intended and an availability of an open storage position in the collating unit.

    (*Id*. col.4 l.22–l.25.)

- **Use of Control System:**  The summary also provides that when a prescription container enters the collating unit from the automatic dispensing unit, "[t]he control system next determines in which holding area to store the container."  (*Id.*  col.5 l.46–l.47).

- **Composition of Control System:**  The specification of the '601 patent explains:

    The control system 28 broadly includes a computing device 92, such as a computer, an infeed conveyor controller 94, a collating unit conveyor controller 96, a guide arm controller 98 for each guide arm 24, a sensor controller 100 for each sensors 26, a central sensor controller 102 for controlling operating of each of the individual sensor controllers 100, an

---

[1] The court construes the facts in the light most favorable to the nonmoving party pursuant to Fed. R. Civ. P. 56.  The court reviewed the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.  The court includes additional facts as necessary in its discussion of the arguments.

-3-

>   input device 104, such as a keyboard, keypad, fingerprint reader, mouse, etc., an indicia reader 106, such as a bar code reader, and at least one display 108, such as a computer monitor, that serves as an operator interface.
>
>   The computing device 92 may broadly comprise any processor capable of being programmed and preferably also includes a memory 110 on which at least one database 112 may be stored.  The computing device 92 communicates with and controls operation of the other components of the control system 28.

(*Id.* col.10 l.62–col.11 l.11.)

- **Container Storage Process:**  The Detailed Description of the Preferred Embodiments discusses the storage process:

    o "When the collating unit 10 is initially empty, the control system 28 instructs the first container exiting the ADS 14 be stored in the first available holding area 22." (*Id*. col.12 l.18–l.20).

    o "After the control system 28 instructs the first container to be stored in the holding area 22, the control system 28 instructs an indicator 114 proximate to the area 22 to display identifying information for the container, such as the patient name and script number." (*Id*. col.12 l.53–l.57).

    o The process of storing a second container is as follows:

    > To store a second container in the collating unit 10, the control system 28 first determines if the second container is for the same patient as the first container, as depicted in Box 8A of FIG. 8.  If the second container is not for the same patient as the first container, the control system 28 will not store the second container in the same holding area 22 in which the first container was stored, since the control system 28 will not store containers for different patients in the same holding area 22.  Thus, the control system 28 instructs the second container to be stored in the first empty holding area 22, as depicted in Box 8B.

    (*Id*. col.12 l.63–col.13 l.6).

**IV.     Analysis**

**A.     Law Governing the Written-Description Requirement**

Once again, the court looks to the written-description requirement to resolve Innovation's motion. This requirement is contained in Section 112 of the Patent Act. The first paragraph of that section provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112; *see also Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (requiring that a specification disclosure "clearly allow a person of ordinary skill in the art to recognize that the inventor invented what is claimed.") (internal quotation marks omitted).

"[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (quoting *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)). A broad claim may be invalid if supported by a much more narrow specification. *Cooper Cameron Corp. v. Kvaerner Oilfield Prod., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002) ("[A] broad claim is invalid when the entirety of the specification clearly indicates that the invention is of much narrower scope." (citing *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998))); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158–59 (Fed. Cir. 1998) (holding that claims lacked written description support when they discussed a generically-shaped cup, but the specification described the invention as a conical-shaped cup, distinguished prior art that used other shapes, and identified the advantages of the conical-shaped cup). The scope of the claims must not exceed the scope of the

invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) ("The patent system is based on the proposition that the claims cover only the invented subject matter.").

To determine whether the written-description requirement is met, the court (or a jury) objectively looks within the four corners of the specification.  *Ariad*, 598 F.3d at 1351; *see also Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011).  The accused infringer must show by clear and convincing evidence that the claims lack written description support. *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011); *see also Ateliers de la Haute-Garonne v. Broetje Automation USA Inc.*, 717 F.3d 1351, 1356 (Fed. Cir. 2013); *Ariad*, 598 F.3d at 1354.

The sufficiency of a patent's written description is ordinarily a question of fact, *Ariad*, 598 F.3d at 1355, but "[a] patent also can be held invalid [as a matter of law] for failure to meet the written description requirement based solely on the face of the patent specification."  *Centocor Ortho Biotech, Inc.*, 636 F.3d at 1347; *Atl. Research Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1353 (Fed. Cir. 2011) ("Although compliance with the written description requirement is a question of fact, this issue is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." (quotation omitted)).

    **B.**  **Application of the Law to this Case**

The Federal Circuit reversed this court's previous decision that the claims lacked written support.  But in its order, the appellate court signaled that the claims might lack written support for another reason.  Specifically, the Federal Circuit wrote that it was not deciding "questions that might be raised by the generality of the claim language," and noted, "It is not immediately apparent how the claim language . . . requires any means of achieving [a central purpose of the invention]."  *ScriptPro, LLC*, 762 F.3d at 1361.  Based on (1) these comments, (2) ScriptPro's representations on appeal, and

-6-

(3) the appellate court's ultimate decision, Innovation filed its second motion based on invalidity. Innovation now argues that the claims lack written description support because they "lack any component for keeping track of what slots are open and what slots are being used for a particular patient." (Doc. 411 at 1.) In other words, the specification indicates that the prescription containers are stored based on patient name and slot availability, but the claims state only that the invention stores prescription containers. Without a limitation on the type of storage, Innovation argues, the broad claims are not supported by the much-more-detailed specification.

Several cases guide this court's decision. First, *Gentry Gallery, Inc. v. Berkline Corp.*: This case involved an invention of dual recliners (within a sectional sofa) that faced the same direction, separated by a console. 134 F.3d at 1474–75. The written description specified that the recliner controls were on the console. *Id.* at 1479. The claims, however, were not so limited. *Id.* at 1475. According to the disclosure, the console's sole purpose was to house the controls. *Id.* at 1479. The court therefore observed that locating the recliner controls anywhere other than the console was outside the stated purpose of the invention. *Id.* Finding the claims invalid, the court noted that "[c]laims may be no broader than the supporting disclosure, and therefore [ ] a narrow disclosure will limit claim breadth." *Id.* at 1480.

Second, *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*: Here, the Federal Circuit affirmed a determination of invalidity when the claims lacked a limit that the specification included. 558 F.3d 1368, 1378 (Fed. Cir. 2009). The patent involved medical valves that contained an internal spike. *Id.* at 1378. But the claims did not require a spike. *Id.* According to the court:

> [The plaintiff's] asserted spikeless claims are broader than its asserted spike claims because they do not include a spike limitation; these spikeless claims thus refer to medical valves generically—covering those valves that operate with a spike and those that operate without a spike. But the specification describes only medical valves with spikes. We reject [the plaintiff's] contention that the figures and descriptions that include spikes somehow demonstrate that the inventor possessed a medical valve that

>operated without a spike.  Based on this disclosure, a person of skill in the art would not understand the inventor of the '509 and '592 patents to have invented a spikeless medical valve.

*Id.* (internal citation omitted).

Third, *Clare v. Chrysler Group LLC*:  Although this case is from another district court, the court still finds its reasoning persuasive.  In *Clare*, the specification discussed hidden storage in the bed of a pickup.  No. 13-11225, 2014 WL 6886292, at *10 (E.D. Mich. Dec. 4, 2014).  The fact that the storage was hidden was "an essential element of the invention." *Id*.  But the claims did not "limit the visibility of the storage." *Id*.  Because the claims were broader than the specification, the court held that they violated the written description requirement. *Id.*

The court now applies the rationale of these cases to the instant case.  Here, the '601 patent's specification limits how the invention automatically stores prescription containers.  The collating unit uses an algorithm to store containers based on patient names and the availability of an open position.  (Doc. 411-2 col.4 l21–l25.)  And one of its central purposes is to collate and store prescriptions by patient. *See ScriptPro, Inc.*, 762 F.3d at 1361.  But the claims do not limit the ways in which the prescription containers are stored.  They do not specify any type of collation or storage.  For example, claim 1 identifies "[a] collating unit configured to automatically store therein prescription containers dispensed by an automatic dispensing system, the collating unit comprising . . . a control system for controlling operation of the infeed conveyor and the plurality of guide arms . . . ."  (Doc. 411-2 col.1 l.25–l.41.)  The court will not reproduce the text of claims 2, 4, and 8, but they are similarly general.  They provide only that a collating unit will automatically store prescription containers, and that the collating unit includes a control system.  They do not specify that the items are collated and stored by patient names and open positions.  Instead, they reference only a control system "for controlling

-8-

operation of the infeed conveyor and the plurality of guide arms" (and, for claim 8, for also controlling the collating unit conveyor).  (*Id.* col.1 l.25–col.2 l.35; Doc. 411-1 col.16 l.34–l.52.)

These broad claims are not supported by the much-more-limited specification.  They do not require that the control system organize containers based on patient name and space availability.  During its appeal, ScriptPro repeatedly emphasized a central purpose of the '601 patent: to "keep[] track of slot use by particular customers and slot availability."  *See ScriptPro, Inc.*, 762 F.3d at 1361.  This means that the use of any other method for automatic storage is outside this purpose.  Based on the broad claim language that is outside a central purpose of the patent, the court determines that no reasonable jury could find the written-description requirement met.

ScriptPro contends that every claim does not have to support the purpose of the invention.  *See Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1325 (Fed. Cir. 2008) ("An invention may possess a number of advantages or purposes, and there is no requirement that every claim directed to that invention be limited to encompass all of them." (internal quotation marks and citation omitted)).  In any event, ScriptPro argues, keeping track of slot use by particular customers and slot availability is only one of several goals.  But ScriptPro does not identify any alternate goals.

The court finds ScriptPro's argument unpersuasive.  While every claim need not encompass every goal, here the claims do not address one of the invention's central goals—one that ScriptPro repeatedly emphasized on appeal.  It is disingenuous for ScriptPro to now downplay the significance of the goal.  Without including a limitation to address the storage by patient name, the claims are simply too broad to be valid.

ScriptPro also contends that resolution of this issue is obvious.  The claims reference a "control system."  It is this system that tells the containers where to go for storage.  To this end, ScriptPro contends that the control system inherently contains a computing device.  The inherent inclusion of a

-9-

computing device is a point of contention between the parties. But it is not one that the court must resolve here. Regardless of whether the claims refer to a control system, they do not specify that the control system directs storage of the containers based on patient name. That is the critical missing element.

**IT IS THEREFORE ORDERED** that defendant Innovation Associates, Inc.'s Motion for Summary Judgment of Invalidity (Doc. 410) is granted.

**IT IS FURTHER ORDERED** that all other pending motions are terminated as moot.

Dated this 30th day of March, 2015, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**
